

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:05-CR-240-P |
| | § | |
| AYESHA SIDDIQUI (6) | § | |

## FACTUAL RESUME

Defendant, Ayesha Siddiqui, reviewed with his attorney, Michael P. Gibson, and acknowledges that she understands that in order to establish her guilt for the One Count Information charging conspiracy to distribute controlled substances, a violation of 21 U.S.C. §§ 846, 841 (a)(1) and 841 (b)(1)(D) the United States must prove each of the following beyond a reasonable doubt.

### A. Elements of the Offense

First: That two or more persons, directly or indirectly, reached an agreement to distribute and possess with the intent to distribute, outside the scope of professional practice and not for a legitimate medical purpose, a controlled substance, to wit: hydrocodone, a Schedule III controlled substance, phentermine a Schedule IV controlled substance, alprazolam, a Schedule IV controlled substance, or promethazine cough syrup with codeine, a Schedule V;

Second: That the defendant knew of the unlawful purpose of the agreement;

Third: That the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose.

**Factual Resume - Page 1**

## B. Facts

Siddiqui, co-defendant Rakesh Jyoti Saran and others, conspired to distribute and possessed with the intent to distribute controlled substances, including but not limited to, hydrocodone a Schedule III controlled substance, phentermine a Schedule IV controlled substance, and alprazolam a Schedule IV controlled substance, without legitimate prescriptions. Siddiqui admits the conspiracy's prescriptions were illegitimate. Siddiqui admits that she became aware that a valid doctor-patient relationship was never established between the prescribing physician and the internet customer. Siddiqui admits the internet controlled substance distributions were outside the scope of professional practice and not for a legitimate medical purpose.

Siddiqui agreed and conspired with others to set up and maintain websites, known as internet facilitation centers (IFCs) for the purpose of facilitating the distribution of controlled substances. The IFCs operated as conduits or brokers between internet customers looking for drugs who placed an order with the IFC, physicians who in exchange for fee paid by the IFC approved the internet customer orders, and pharmacies that filled and shipped orders for a fee paid by the IFC. Internet customers looking for drugs logged on to an IFC controlled website and ordered controlled substances for delivery to their homes and offices. Saran used, one or more of his twenty-three, pharmacies to fill the orders. Saran's pharmacies were located in the Northern District of Texas. Saran arranged for the delivery of controlled substance orders from his

**Factual Resume - Page 2**

pharmacies to the internet customers. Saran shipped the packages containing the orders using the shipping information provided by the internet customers.

Siddiqui managed IFC accounts for Saran. Siddiqui ordered controlled substances from commercial wholesalers for distribution through the internet pharmacies. Siddiqui reconciled billing reports from the IFC for the pharmacies fulfillment of drug orders placed by drug users. Siddiqui was president and part co-owner of East Pointe Pharmacy Services Inc.

On or about May 6, 2005, Saran and Siddiqui falsely represented to a DEA investigator in furtherance of the conspiracy that Saran was Imraan Siddiqi, secretary of East Pointe. Siddiqui also falsely represented to DEA investigators in furtherance of the conspiracy that East Pointe did not handle or distribute controlled substances. East Pointe's DEA registration and ability to purchase controlled drugs expired on August 31, 2004.

On August 9, 2005, at the direction of Saran and in furtherance of the conspiracy, Siddiqui contacted a temporary employment service in an effort to obtain three temporary pharmacists. She was told by Saran that a wholesaler was going to inspect some of his pharmacies and they needed to have pharmacists on site to make them look legitimate. Siddiqui knew that Les Davidoff could not legally review all of the prescriptions. Therefore, to hide the fact that he was the only pharmacist supervising the various pharmacies, Siddiqui hired two temporary pharmacists to be on site to deceive the

**Factual Resume - Page 3**

wholesalers during the inspections.

In April and May 2005, Siddiqui, working for Saran, processed orders for Hydrocodone and Alprazolam. Siddiqui received the orders from account leads, including Gaston Blanchet's IFC, for Hydrocodone and Alprazolam. Siddiqui then contacted the wholesalers, such as Cardinal, and ordered the controlled substance to be delivered to Infiniti to fulfill Blanchet's and other IFC owners internet drug orders.

Siddiqui admits she participated in the illegal distribution in excess of 40,000 dosage units of hydrocodone a Schedule III controlled substance, pursuant to the conspiracy to distribute controlled substances by and through the internet.

AGREED TO AND SIGNED this 3rd day of _October_, 2006.

RICHARD B. ROPER
UNITED STATES ATTORNEY

AYESHA SIDDIQUI
Defendant

WILLIAM MCMURREY
Assistant United States Attorney
Texas State Bar No. 13811100
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8649
Facsimile: 214.767.2846

MICHAEL P. GIBSON
Attorney for Defendant
Texas State Bar No. 07871500

**Factual Resume - Page 4**